**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

STEVEN RODRIGUEZ,

                                             Plaintiff,

            v.                                                          No. 10-CV-88
                                                                          (FJS/DRH)
DONNIE MITCHELL, Correction Officer,
Clinton Correctional Facility; GILLETTE,
Correction  Officer, Clinton Correctional
Facility; SGT. GRIMSHAW, Correctional
Officer, Clinton Correctional Facility; and
BAXTER, Correctional Officer, Clinton
Correctional Facility;

                                             Defendants.
_____

**APPEARANCES:**                          **OF COUNSEL:**

STEVEN RODRIGUEZ
Plaintiff Pro Se
07-A-5946
Sullivan Correctional Facility
Post Office Box 116
Fallsburg, New York 12733

HON. ERIC T. SCHNEIDERMAN          MEGAN M. BROWN, ESQ.
Attorney General for the                       Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff pro se Steven Rodriguez ("Rodriguez"), an inmate in the custody of the New

York State Department of Correctional and Community Supervision("DOCCS"), brings this

_____

     [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

action pursuant to 42 U.S.C. § 1983 alleging that four DOCCS employees violated his constitutional rights under the Eighth Amendment.  Compl. (Dkt. No. 1).  Presently pending is the motion of defendants Mitchell, Grimshaw, and Baxter for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 48.[2]  Rodriguez has not responded to the motion.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Failure to Respond

Rodriguez did not oppose defendants' motion.  The failure to respond continued even after the Court, acting sua sponte, granted Rodriguez an extension of time to file a response and reminded him of the consequences of failing to do so.  See Dkt. No. 55. "Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).  Defendants failed to provide any such notice in their motion papers as required by the Second Circuit and as normally done by the office of defendants' counsel.  Id.  However, the Court provided such notice in its order.  Dkt. No. 55 ("Plaintiff is advised that since the relief requested . . . is dismissal of this case, his failure to respond to defendants' motion may result in the termination of the case in favor of the defendants . . . .").  Despite this notice, Rodriguez failed to respond.

"The fact that there has been no response to a summary judgment motion does not . . .

---

[2] Defendant Gillette, who was misidentified and is actually B. Drollette (see Text Order dated Feb. 2, 2011), was served on February 10, 2011 (Dkt. No. 53) and filed an answer on June 3, 2011 (Dkt. No. 57).  Both of these actions were subsequent to the filing of the present motion.  `Gillette has never requested to be joined in the present motion or yet filed a motion on his own behalf.  Therefore, this report-recommendation is limited to the three defendants who filed the pending motion.

mean that the motion is to be granted automatically." <u>Champion</u>, 76 F.3d at 436.  Even in the absence of a response, a defendant is entitled to summary judgment only if the material facts demonstrate his or her entitlement to judgment as a matter of law. <u>Id.</u>; Fed. R. Civ. P. 56(c).  However "[a] verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . ." <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted).   As to those facts which are not disputed in Rodriguez's complaint, the facts as set forth in defendant's Rule 7.1 Statement of Material Facts (Dkt. No. 48-1) [hereinafter "Def. Statement"] are accepted as true. <u>See generally</u> <u>Champion v. Artuz</u>, 76 F.3d 483, 486 (2d Cir. 1996); <u>see</u> <u>also</u> N.D.N.Y.L.R. 7.1(a)(3) ("<u>The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>") (emphasis in original).

## II. Background[3]

On June 30, 2009, Rodriguez was involved in a physical confrontation with corrections officers.  While Rodriguez alleges in his complaint that he was the victim of assaults by defendants, the facts asserted by defendants on this motion and not refuted by  Rodriguez are as follows.

On June 30, 2009, defendant Baxter conducted a count of the inmates when Rodriguez "grabbed the front of [her] uniform shirt as [she] was passing his cell . . . pulled [her] toward his cell bars . . . grabbed [her] left arm with one hand pulling it through the bars into his cell .

---

[3] While additional copies of the reports and statements from the defendants are included in the unusual incident packets, which were also provided in the documentation submitted in support of the current motion, for ease and efficiency, citation will only be made to the first submitted copy of each report.

. . [and her] waist with his other hand . . . ma[king] vulgar, sexual comments and threats toward [her]."  Baxter Decl. (Dkt. No. 48-7 at 1-4) ¶¶ 4-8; Dkt. No. 48-7 at 6.  After repeated orders from Baxter to release her, Rodriguez refused and she called for help from defendant Mitchell.  Baxter Decl. ¶¶ 9-11; Dkt. No. 48-7 at 6; Mitchell Decl. (Dkt. No. 48-2 at 1-4) ¶ 4, Dkt. No. 48-2 at 6.  Defendant Mitchell also ordered Rodriguez to release Baxter, whom Mitchell knew was pregnant, and when Rodriguez failed to comply Mitchell punched Rodriguez several times through the bars until he ultimately let go of Baxter's arm and waist.[4]  Baxter Decl. ¶¶ 10, 14; Dkt. No. 48-7 at 6; Mitchell Decl. ¶¶ 5-10, 17; Dkt. No. 48-2 at 6.  When Baxter was free, Mitchell escorted her out of the housing unit and notified defendant Grimshaw.  Baxter Decl. ¶ 12; Dkt. No. 48-7 at 6; Mitchell Decl. ¶ 10; Dkt. No. 48-2 at 6.  Neither defendant saw or had any further contact with Rodriguez again.  Baxter Decl. ¶ 16; Mitchell Decl. ¶ 14.

Baxter and Mitchell reported the incident to defendant Grimshaw and Grimshaw ordered the two to go to the infirmary for examination.  Grimshaw Decl. (Dkt. No. 48-3) ¶¶ 6-10.  Grimshaw proceeded to Rodriguez's cell and when he arrived, he observed Rodriguez "being disruptive, attempting to hurt himself by throwing himself on his bed and floor and punching the walls of his cell."  Grimshaw Decl. ¶ 11; Dkt. No. 48-6 at 1; see also Grimshaw Decl. ¶ 27 (observing no injury except those self-inflicted by Rodriguez when he was "throwing himself against [the] walls and furniture in his cell.").  Grimshaw ordered Rodriguez to stop attempting to hurt himself, Rodriguez ultimately complied, and he was escorted to the infirmary for evaluation and an interview.  Grimshaw Decl. ¶¶ 12-14.

---

[4] Mitchell was the only defendant who exerted force on Rodriguez on June 30, 2009 according to defendants.

Medical examination revealed red marks and redness in the areas on his head, shoulders and chest, left upper arm, back, and temples.  Defs. Statement ¶ 11.  No further treatment was deemed necessary for his injuries.  Grimshaw Decl. ¶ 17.

Rodriguez was interviewed and admitted "that he grabbed the officer through the gate and threatened to stab [her] . . . and then started to throw himself around the cell, because he knew he was in trouble."  Grimshaw Decl. ¶ 16; Dkt. No. 48-9 at 69 (inmate injury report written directly after the use of force wherein Rodriguez stated that he "grabbed the officer thru the gate and threatened to stab the officers and then started to throw [him]self around the cell [because he] knew [he] was in trouble.").[5]  Rodriguez repeated his version of the incident again, confirming that he threw himself into the walls and from his bed and that he was uninjured.  Dkt. No. 48-5 at approximately 9:13 p.m. and 9:25 p.m.  Rodriguez was then escorted to the Special Housing Unit ("SHU")[6] without incident.  Grimshaw Decl. ¶¶ 18, 28; Dkt. No. 48-9 at 66-67.

Rodriguez was issued, and pled guilty to, two Tier III misbehavior reports alleging violent

---

[5] In addition to the disciplinary hearing record, unusual incident reports, and medical observations, defendants also included a video recording of Rodriguez's evaluation and interview in the infirmary.  Dkt. No. 48-5.  The video confirms defendants' statement where at approximately 9:12 p.m. Rodriguez explains that he grabbed an officer through the bars, threatened to stab the officer, and then began inflicting harm upon himself because he knew that he was in trouble.  Id.  These statements were confirmed, and repeated by Rodriguez at approximately 9:13 p.m. and again at 9:25 p.m.  Id.  Additionally, the video recording also captures the escort from the infirmary to SHU, showing no further incidents.  Id.

[6]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

conduct, assault on staff, forcible touching, threats, refusing a direct order, harassment, and

possession of an altered weapon[7].  Dkt. No. 48-9 at 7-21 (transcripts from disciplinary

hearings where Rodriguez pleaded guilty to misbehavior reports); Dkt. No. 48-9 at 76-77

(misbehavior charge and contraband receipt for confiscated weapon).  Rodriguez ultimately

was sentenced to forty months in SHU.  Dkt. No. 48-9 at 100-101, 109-16.  This action

followed.


### III.  Discussion

In his complaint, Rodriguez alleges that his Eighth Amendment rights were violated

when he was subjected to excessive force.  Defendants move for summary judgment on the

merits and a claims of qualified immunity.


### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to

any material fact if supported by affidavits or other suitable evidence and the moving party

is entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

---

[7] After this incident Grimshaw "authorized a search of [Rodriguez's] cell . . . [where] a razor type weapon with [a] sheath [was found] inside [Rodriguez's] cell locker on the top shelf with his personal property."  Grimshaw Decl.  ¶ 23.

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

   The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

   When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.


## B. Eighth Amendment

   The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983.

Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against

cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."

Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).

To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish

both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir.

1999).

    The objective element is "responsive to contemporary standards of decency" and

requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth

Amendment protection."  Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186

F.3d at 262.  However, "the malicious use of force to cause harm constitute[s] [an] Eighth

Amendment violation per se" regardless of the seriousness of the injuries.  Blyden, 186

F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel

and unusual' punishments necessarily excludes from constitutional recognition de minimis

uses of physical force, provided that the use of force is not of a sort repugnant to the

conscience of mankind."  Hudson, 503 U.S. at 9-10 (citations omitted).  "'Not every push or

shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a

prisoner's constitutional rights.'"  Sims, 230 F.3d at 22 (citation omitted).

    The subjective element requires a plaintiff to demonstrate the "necessary level of

culpability, shown by actions characterized by wantonness."  Id. at 21 (citation omitted).

The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting

Hudson, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton

manner, the Second Circuit has identified five factors to consider: "the extent of the injury

and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

In this case, Rodriguez has failed to establish an Eighth Amendment violation.  Although district courts are generally not tasked with "[a]ssessments of credibility and choices between conflicting versions of the events . . . on summary judgment," there have been exceptions where summary judgment has been granted when there is nothing that a reasonable juror could rely upon except "conclusory allegations or unsubstantiated speculation." Jeffreys v. City of New York, 426 F.3d 549, 554-55 (2d Cir. 2005) (citations omitted).

> [I]n the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor.

Id. at 555 (internal quotation marks and citations omitted).

This is such a case.  Rodriguez's complaint, which as a verified statement serves as source of material facts, is  riddled with inconsistencies and fanciful notions that no reasonable factfinder could believe given the defendants' statements and Rodriguez's previous and inconsistent admissions.  In his complaint, Rodriguez contends, without support or identification, that he was brutally attacked by dozens of corrections officers in

9

the infirmary, that he was assaulted by named defendants in his cell, and that the impetus of both assaults were benign comments about how "he would like to stab as many officers as possible as retribution for the inhumane mistreatment he is forced to endure."  Compl. ¶ 15.  This is all that Rodriguez relies upon to defeat defendants' motion.

Conversely, the defendants report and Rodriguez admits that he was the aggressor, grabbing defendant Baxter, threatening to stab her, and then harming himself because he knew he was in trouble.  Had Rodriguez not repeatedly admitted to defendants, captured both in a signed written statement and on video, that he was the aggressor or main source of his injuries, a reasonable fact finder might find in his favor.  However, given the state of the record, no reasonable juror could ever find for Rodriguez's incredible recitation of events in his complaint.  See Jeffreys v. Rossi, 275 F. Supp. 3d 463, 476-77 (S.D.N.Y. 2003) aff'd Jeffrys v. City of New York, 426 F.3d 549 (2d Cir. 2005) ("[W]hen evidence is so contradictory and fanciful that it cannot be believed by a reasonable person, it may be disregarded.") (citations omitted).

Moreover, implementing the Second Circuit's five factor test, it is also clear that Mitchell acted in a reasonable manner.  Rodriguez admitted that he caused the use of force incident by grabbing defendant Baxter, refusing to release her, and threatening to stab her.  When defendant Mitchell viewed Baxter in a compromised position, knowing that she was pregnant and seeing that Rodriguez was not going to comply with verbal commands to release her, Mitchell used only the amount of force necessary to de-escalate the situation and ensure Baxter's safety and freedom.  Once Baxter had been released, Mitchell terminated using force.  The force used was minimal, as it resulted in only red marks to Rodriguez's face and body.

Furthermore, the amount of force is questionable as Rodriguez admitted to attempting to cause himself bodily harm because he knew the consequences to his actions of grabbing and threatening a corrections officer would be severe.  As demonstrated by Rodriguez's lack of bodily injury, the reasonableness of the force used, the limited extent of force applied, and the time which elapsed between application of the force and repeated attempts to gain Rodriguez's compliance, the force used was minimal and reasonable given the totality of the circumstances.  See  Anderson v. Sullivan, 702 F. Supp. 424, 426-27 (S.D.N.Y. 1988) (granting summary judgment where inmate has no medically determinable injuries after being pushed into a bar while being restrained); Estes-El v. State of New York, 522 F. Supp. 885, 890 (S.D.N.Y. 1982) (holding that a man who sustained no physical injury was not subjected to excessive force when he was handcuffed, shackled to a wall, and forced to remove his headgear).

Accordingly, the moving defendants' motion for summary judgment should be granted on these grounds.

### C. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges are "clearly defined . . . qualified or

good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citations omitted).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, it has not been shown that defendants violated Rodriguez's constitutional rights.

Therefore, it is recommended in the alternative that the moving defendants' motion on this ground be granted.


## IV.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the motion of defendants Mitchell, Grimshaw and Baxter for summary judgment (Dkt. No. 48)  be **GRANTED** and that judgment be granted as to these three defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

12

REVIEW.  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  July 28, 2011
      Albany, New York

_David R. Homer_
United States Magistrate Judge